FARMERS STATE BANK OF BELDEN ET AL., APPELLANTS, V.
MARTIN NELSON ET AL., APPELLEES.

FILED MARCH 7, 1928. · No. 25703.

C. M. *Skiles*, *Fred S. Berry* and *James E. Brittain*, for
appellants.

*R. J. Millard* and *Clarence E. Haley*, *contra*.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON,
EBERLY and HOWELL, JJ., and REDICK, District Judge.

EBERLY, J.

Plaintiffs in the district court sought to enjoin certain
officers of Cedar county, Nebraska, from enforcing the pay-
ment of certain personal taxes against the assets of the
Farmers State Bank of Belden, Nebraska. To the peti-
tion a general demurrer, based on the ground that "the
same does not contain facts sufficient to constitute a cause
of action against the defendants, or any of them," was
sustained. The plaintiffs electing to stand upon their pe-
tition, the action was accordingly dismissed and they now
present the issues involved to this court on appeal for trial
*de novo*. No brief has been submitted by appellees.

The petition, after alleging in apt terms the legal ca-
pacity of plaintiffs to sue, sets forth that during the year
1925 the Farmers State Bank of Belden, Nebraska, was

hopelessly insolvent; that on or about March 15, 1926, the department of trade and commerce, after due investigation, placed the bank in charge of the guaranty fund commission, where it still remains; that its affairs since said date have been continuously and still are being controlled by that commission "in the manner provided by law;" that the present condition of said bank is that its sole assets consist of a bank building and fixtures of the value of from $5,000 to $6,000, and "other assets" not exceeding in value the sum of $150,000, and that the aggregate of its total assets is from $60,000 to $75,000 less than its valid unpaid obligations; that on April 1, 1925, in the manner and form provided by section 5887, Comp. St. 1922, as amended, a statement was duly made to the proper taxing authorities of Cedar county by the proper officials of the bank, then a going concern, and the value of each of its shares of stock was thereupon by them determined; that upon the valuation thus determined taxes for state, county, and of the various subdivisions thereof, to the extent of $647.55 were accordingly levied, no part of which has been paid, and which, at the commencement of this action, were delinquent.

Plaintiffs further allege: "That the property represented by said shares of stock has entirely disappeared, and any lien which said bank might have thereon by reason of the payment of said taxes would be wholly worthless and without value, and there is no property or assets from which said bank could be reimbursed in case said taxes were paid by said bank or from a sale of any of its assets and property; that said tax is not a tax against said bank or against the property of said bank, and said taxes are not owing by, or an obligation or indebtedness against, said bank, and said bank, or its property and assets, cannot under the law be used or taken for the payment of said tax, or any part thereof."

It also appears that if the defendants are not enjoined they will proceed to satisfy such taxes out of the assets of the bank in question.

Plaintiffs' fundamental contentions, as outlined in their brief, upon appeal, may be fairly reduced to two, viz.: (1) That the taxes, due to the invalidity of certain provisions of our statutes, were not valid and legally assessed; (2) that the taxes, if legally assessed, were taxes against the stock alone, and were not enforceable against the assets of the bank under the circumstances disclosed by the petition.

The first contention is based upon the claim of plaintiffs that section 5887, Comp. St. 1922, as amended by chapter 165, Laws 1925, relating to the taxation of banks, is and has been since its enactment invalid and ineffective. However, the petition filed in the district court does not expressly, nor by necessary implication, present the question of the validity of the statutory provisions which appellants now attack. It nowhere appears either in the petition or in the record set forth in the transcript that the question now presented by them in their brief was ever presented to, or considered by, or even incidentally determined by, the district court, from which the appeal comes. The conclusion follows that the question involving the invalidity of the statute controlling in the instant case is not now before us for consideration, and that the usual presumptions of validity must, for the purposes of this case, attach to each legislative enactment, pursuant to which the taxes purport to be levied. *First Nat. Bank v. Chehalis County*, 166 U. S. 440; *National Bank of Commerce v. Seattle*, 166 U. S. 463; *Clearwater Bank v. Kurkonski*, 45 Neb. 1; *Pill v. State*, 43 Neb. 23; *Batty v. City of Hastings*, 69 Neb. 511.

Plaintiffs' second contention is: "That the tax in this case is not a tax on the bank, and there is no warrant of right or of law to levy on the assets of the bank."

Section 12, ch. 30, Laws 1925, provides in part as follows: "The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and

thus under receivership, including the liability of stockholders, and, upon proof thereof, they shall be paid immediately out of the available cash in the hands of the receiver."

The statute just quoted by necessary implication recognizes the force and effect of federal, state, county and municipal taxes, as claims against the assets of a bank, and makes the right of the depositors expressly subject to the same. The terms of the statute in neither substance nor effect limits the word "taxes" to taxes directly assessed against the bank as a corporate entity, or to taxes which in and of themselves have the character of a lien against the bank's assets, nor does it in terms exclude therefrom any taxes which the bank as a corporate entity, as a going concern, was required to pay. The guaranty fund commission necessarily has no greater rights than the depositors it represents.

A careful consideration of the authorities cited in plaintiffs' brief, in connection with the above cited and other statutory provisions which govern the matter in this state, convinces the writer that the question before us is to be determined by ascertaining the legislative intent as expressed in our statutory provisions applicable.

Chapter 165, Laws 1925, provides in part: "The president, cashier or other accounting officer of every bank or banking association, loan and trust or investment company, shall, on the first day of April of each year, make out a statement under oath, showing the number of shares comprising the actual capital stock of such association, bank or company; the name and residence of each stockholder, the number of shares owned by each and the value of the shares on the first day of April, and shall deliver such statement to the proper county assessor. Such capital stock shall thereupon be listed and assessed by him as intangible property at seventy per cent. of the mill rate at which tangible property is assessed in the taxing district where the principal place of business of such association, bank or company is located. * * * *Such association, bank or company* shall pay the taxes .

assessed upon its stock and shall have a lien thereon for the same; and for the purposes of assessment it shall not be permissible to deduct from the amount of capital stock, the value of any United States government securities owned by such bank, association or company. Such taxes shall be in lieu of all other taxes on intangible property of such bank, association or company, as well as all other taxes on the stock or shares of such bank, association or company in the hands of the individual."

The legislative device here presented in its main outline, it is true, includes practical adoption of the method of enforcing state taxation against national banks, permitted by federal law applicable to those institutions, which is applied by the state with important modifications to certain classes of state corporations as well.

As a device applicable to national banks, White, C. J., says: "It is undoubted that the statute from the purely legal point of view, with the object of protecting the federal corporate agencies which it created from state burdens and securing the continued existence of such agencies despite the changing incidents of stock ownership, treated the banking corporations and their stockholders as different. But it is also undoubted that the statute for the purpose of preserving the state power of taxation, considering the subject from the point of view of ultimate beneficial interest, treated the stock interest, that is, the stockholder, and the bank as one and subject to one taxation by the methods which it provided." *Bank of California v. Richardson,* 248 U. S. 476.

The conclusion that the purpose of our state taxation statute, from the point of view of the "ultimate beneficial interest," was to treat the stock interest, that is, the stockholder, and the bank as one, subject to one taxation, is certainly reinforced by the following words quoted above: "Such taxes shall be in lieu of all other taxes on intangible property of such bank, association or company, as well as all other taxes on the stock or shares of such bank, association or company in the hands of the individual."

It may fairly be said that our state revenue laws should be construed in the light of the constitutional provisions relating to their enactment. And where terms are indefinite or ambiguous, the entire act should be so construed as to, if possible, harmonize with the letter and spirit of such constitutional provisions.

Section 1, art. VIII, Const., sets forth the rules to be observed in the assessment of various kinds of property in "raising necessary revenue."

Section 2, art. VIII, Const., provides for certain exemptions from taxation not applicable here, and also contains the provision: "No property shall be exempt from taxation except as provided in this section."

Section 4, art. VIII, Const., provides: "The legislature shall have no power to release or discharge any county * * * or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever."

There is in the petition a total absence of any suggestion that the powers of the county board of equalization of Cedar county, Nebraska, were invoked by the bank at any time in the instant case. It would follow that it must be conclusively presumed that the assessment made by the proper authorities of that county, after the filing of the statement of April 1, was, in effect, a proper and just apportionment to the Farmers State Bank of Belden, Nebraska, of its proportionate share of taxes to be levied for state purposes. *First Nat. Bank of Blue Hill v. Webster County*, 77 Neb. 813.

In the present case, therefore, the tax as originally assessed must be deemed a valid tax. But the question of its enforcibility against the assets of the bank, under the conditions appearing in the pleadings, is still to be determined.

It appears without question that the taxes assessed against the bank for the year in question embraced two

items:  (1) A tax on tangibles assessed against the bank as a corporation *eo nomine;* (2) a tax on intangibles assessed against the stock (the evidence of ownership of the owner of the intangible assets involved).  The sum of the two amounts thus assessed, it seems clear, represented the fair and just proportion of the burdens of government that the "ultimate beneficial interests" alike, represented by the "corporate entity" and the "stock," should justly bear in view of the relation its property sustained to the mass of the property then subject to taxation.

The statute quoted expressly provides that the bank in its corporate capacity shall pay both assessments thus made, and this is the sole method provided by which the payment of these taxes legally laid may be lawfully enforced.

The guaranty fund commission which has succeeded to the rights possessed by the "ultimate interests involved," together with the bank as corporate representative of such ultimate interests, now, as joint plaintiffs herein, seek to take advantage of the statutory device originally brought into being to prevent a double exaction of taxes and to secure a just taxation, as a means for defeating the payment of a portion of the taxes justly assessed against the same "ultimate beneficial interests" under the form of "stock."

It must be admitted that the language of section 12, ch. 30, Laws 1925, fairly and justly evidences a legislative intent that "federal, state, county and municipal taxes" shall be a first and prior claim against all the assets of the bank.

If the statutory language quoted, thus considered, be deemed to embrace and include the tax on intangibles and to require its payment out of the assets of the bank, it is the enforcement of a tax legally assessed.  The guaranty fund commission succeeding to and standing in the shoes of the "ultimate beneficial interests" would, in that event, take the right to possess and use this intangible property forming the real basis of the tax assessed, subject to this

contribution legally due to the public. The "ultimate property" as the substantial and real basis of the assessment would thus carry no greater burden of tax than other property of identical character owned by taxpayers generally. Equality of taxation is thus sustained and enforced.

On the other hand, if this language be construed as excluding the tax assessed on the bank's intangibles, the guaranty fund commission would, it is true, take the "ultimate property," which had been assessed as the intangible property of the "ultimate beneficial interests," relieved of all public demands. But it would also be, in effect, a "release" and "discharge," without lawful payment, of the "ultimate beneficial interests," as well as the intangible property involved, from taxes legally levied and assessed. This would violate at least the spirit of section 4, art. VIII, Const., and make of our intangible tax law, not simply a device to secure an equitable taxation, but a device by means of which indirectly, at least, to effect a "discharge" or "release" of taxes duly levied and assessed, in a manner prohibited by the express terms of the Constitution. Equality in taxation would be, in effect, if not in name, wholly destroyed. Public policy therefore impels that construction by means of which the ambiguity, if any there exists, be resolved in favor of the enforcement of the tax against the ultimate property which formed the basis of the assessment in the hands of the ultimate beneficial interests sought to be assessed.

Accordingly, it follows that the words "shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall * * * be a first lien on all the assets of the banking corporation from which they are due, must be deemed to embrace and include all taxes levied upon the intangible property of such bank and to evince a legislative intent to make such taxes a first and prior claim against such assets as against the depositors, as well as against the guaranty fund commission, the depositors' representative.

We have given due consideration to the contention that the federal decisions construing section 5219, Rev. St. U. S. as in force prior to March 4, 1923, are controlling. It is to be remembered in this connection that "National banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority except as congress consents and then only in conformity with the restrictions attached to its consent." *First Nat. Bank v. Anderson,* 269 U. S. 341.

No federal law contains provisions similar to the controlling statutory and constitutional provisions in the instant case. We therefore decline to adopt the rule announced in the federal cases on which plaintiffs rely as applicable to the questions here presented.

The basic question involved in this appeal is whether the guaranty fund commission is, under the Nebraska statutes, required to pay these taxes out of the assets of this bank. This, for the reasons stated, and in consonance with the views announced by Day, J., in *State v. American State Bank,* 114 Neb. 740, we decide in the affirmative.

It follows that the action of the district court appealed from was correct, and its judgment is

AFFIRMED.