STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. ORD
STATE BANK: VALLEY COUNTY, CLAIMANT, APPELLEE:
I. A. KIRK, RECEIVER, APPELLANT.

FILED JUNE 13, 1928. No. 26047.

*C. M. Skiles, Butler & James* and *Edward L. Vogeltanz,* for appellant.

*George A. Munn, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY, and HOWELL, JJ., and PROUDFIT and REDICK, District Judges.

REDICK, District Judge.

Appeal by the receiver of the Ord State Bank, insolvent, from the allowance of a claim for taxes ordered to be paid from the depositors' guaranty fund. The receiver was appointed September 24, 1926, and on that date took possession of all real and personal property and assets of the bank. On October 4, 1926, by an arrangement between the department of trade and commerce, the receiver and the State Bank, Ord, Nebraska, a newly organized banking corporation, all the assets of the insolvent were sold and conveyed to said State Bank, free from any liens or claims except such as were assumed by the vendee, and which were described as liabilities of deposits subject to check, cashier's checks and time certificates of deposit. The contract of sale was approved by the court and all the assets delivered to the vendee. October 27, 1926, an order was made in the receivership proceedings fixing December 1, 1926, as the last date for filing claims, and the 6th day of

December as the time for hearing claims. Notice of these orders was duly given by posting and publication in newspapers, and on December 6, 1926, the court entered an order barring all claims not theretofore filed.

On February 3, 1927, the county of Valley, appellee, filed a claim against the insolvent bank for the sum of $578.74, for personal taxes for the year 1926 levied upon the shares of stock of said bank, and alleging that said claimant had no notice whatever of the time fixed for filing claims or the time of hearing the same, or of the closing of said bank, in time to permit filing said claim before said dates, and praying for an order on the receiver to show cause why said taxes should not be paid. An order was thereupon issued as prayed, and the receiver filed his return to said order objecting to the allowance of said claim on the following grounds:

(1) That the court had no jurisdiction, after the order barring claims, to allow the same except upon compliance with certain conditions of the statute, which was not done.

(2) An answer to the merits of the claim, admitting the assessment of the taxes in question, that the receivership proceedings are still pending, and that all the assets were sold as alleged, but denying that they were sold free from any lien for taxes of Valley county; and alleging that the State Bank bought said property subject to said tax lien, which it should pay.

(3) That said taxes were invalid as to any amount in excess of $99.10, for reasons which will be referred to later on upon the discussion of this defense.

The county of Valley filed a demurrer to the return, objections to jurisdiction, and answer of the receiver, on the ground they do not state facts sufficient to constitute a legal defense to the tax claimed. The demurrer was sustained by the court, and the receiver refused to plead further, but elected to stand upon his demurrer. The claim was allowed and the receiver ordered to pay the same out of any funds in his hands, and, if they were insufficient, that the deficiency be paid out of the depositors' guaranty fund by

the department of trade and commerce of the state of Nebraska; to which order and judgment the receiver excepts and appeals to this court.

The first objection of the receiver is to the jurisdiction of the court to allow the claim and order its payment when the same had not been filed prior to the. order barring all claims. By section 21, ch. 191, Laws 1923, it is made the duty of the receiver, within seven days after the order fixing the date for filing and hearing claims, to mail to each known creditor of such bank a notice of the time and place of hearing on claims by the court; and it was further provided that any claim not presented within the time fixed by such notice should be barred, "unless the court shall by order direct payment thereof thereafter, which order may be entered upon a showing, within six months from time fixed by such notice, that the creditor did not have knowledge of the closing of said bank within the time to permit filing of the claim before the date fixed by the court for hearing on claims."

Section 24 of said act provided: "The claims of depositors, for deposits, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and, subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership, including the liability of stockholders, and, upon. proof thereof, they shall be paid immediately out of the available cash in the hands of the receiver." It was then provided that, if the funds were insufficient to pay the claims of depositors and holders of exchange, the court should determine the amount of the deficiency and certify the same to the department of trade and commerce, which should cause the same to be paid from the depositors' guaranty fund. The receiver reported to the court that there were no known creditors, and no notices were mailed as provided by the statute. It seems clear that, before the claim of a creditor would become barred by the statute, it should appear that the no-

tices required to be given by the statute had been mailed; but we think that the county was not a creditor, within the meaning of the statute, to whom notice was required to be mailed, for two reasons:

(1) The term "creditor" is defined by Webster as "one who gives credit in business matters; hence, one to whom money is due;" and in ordinary acceptation has reference to financial or business transactions. It is in this sense that the term is used in the statute.

(2) By express provision of the statute, claims for taxes are made prior liens upon the assets of the bank in the hands of the receiver, and it was his duty to pay them before paying the depositors.

Taxes are matter of public record, and it has been held in analogous cases that for that reason it is not necessary that they should be filed or proved as a claim against the estate. *In re Prince & Walter,* 131 Fed. 546, a proceeding in bankruptcy. And in estate proceedings it is said: "The more general view is that the requirement of presentation does not apply to claims for taxes and assessments, whether assessed before or after the death of decedent." 24 C. J. 325, sec. 946. Our attention is called by appellant to the case of *Midland Guaranty & Trust Co. v. Douglas County,* 217 Fed. 358, as holding that it is the duty of the county to present a claim for taxes in the receivership proceedings the same as any other claimant, but the case goes no further than to hold that it was proper for the county to appear in the receivership case and ask for an order for the payment of the taxes substantially as was done in the present case. The case cited *Millett v. Early,* 16 Neb. 266, which also held merely that it was proper for the county to file a claim in estate proceedings. In this connection it may further be observed that section 5996, Comp. St. 1922, provides:

"No demand for taxes shall be necessary, but it shall be the duty of every person subject to taxation to attend at the treasurer's office and pay his taxes."

We are of the opinion that for the reasons above noted,

and the receivership proceedings being still pending, the court had jurisdiction to order the payment of the taxes.

The second objection of the receiver is that the assets were sold to the State Bank subject to the lien of the taxes. This was not in accordance with the terms of the contract whereby the State Bank assumed only liabilities for deposits subject to check, cashier's checks and time certificates of deposit. Furthermore, the taxes in question did not become a lien upon the assets of the Ord State Bank until November 1, 1926, and, therefore, as between the seller and the purchaser, the latter would take the property free of the lien in the absence of a contract to the contrary.

The third objection of the receiver that the taxes are invalid presents a more serious question. It is based upon the propositions: (1) That the same are unconstitutional as in violation of section 5219, Rev. St. U. S. (1878); and (2) that they are unconstitutional as violating the rule of uniformity required by section 1, art. VIII of the Constitution of Nebraska. Of these in their order:

By sections 5884-5889, Comp. St. 1922, provision is made for the taxation of intangible property, which it defines as including corporation shares or stocks, and for the manner of their assessment. Section 5884 provides that intangible property shall be separately listed and taxed on the basis of 25 per cent. of the mill rate levied upon tangible property. By section 5887 special provision is made for the return by banks and loan and trust or investment companies of the number of shares comprising their capital stock and the value of the shares on the 1st day of April, to be delivered to the county assessor. It is then provided: "Such capital stock shall thereupon be listed and assessed by him (county assessor) at the same rate as tangible property is assessed in the taxing district where the principal place of business of such association, bank or company is located." It will be noted that by this statute shares of stock in the hands of individuals, corporations and all other property owners, except banks and loan and trust or investment companies, were assessed at 25 per cent. of the

rate of taxation upon tangible property, while the same class of property, shares of stock of banks, loan and trust, or investment companies, was taxed at the full rate of taxation on tangible property. In *Merchants Nat. Bank v. City of Richmond*, 256 U. S. 635, it was decided that a statute and ordinance taxing national bank stocks at a greater rate than that levied upon intangible personal property in general were invalid as contravening section 5219, Rev. St. U. S. (1878) which provided that state taxation of shares in national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." Following the decision of that case, in *State Bank v. Endres*, 109 Neb. 753, we held that, if national banks were to be excluded from the operation of section 5887, state banks would also have to be excluded, because otherwise the taxes levied thereunder would lack the uniformity as to class required by section 1, art. VIII of the Constitution of Nebraska. That case was cited with approval in *Central Nat. Bank v. Sutherland*, 113 Neb. 126.

In 1925 section 5884, defining intangibles, and section 5887, were repealed by the legislature (Laws 1925, ch. 165) and intangibles were divided into two classes: Class A consisting of money, United States legal tender notes and other securities of the United States payable on demand, savings accounts, all bank deposits, bills of exchange, checks and drafts, to be taxed at 2½ mills on the dollar of the actual value thereof. Class B to include all other kinds of intangible property named in the section which is not included in class A, among which are included corporation shares or stocks, and providing that all intangible property in class B should be taxed at the rate of 5 mills on the dollar of the actual value thereof. It was further provided that the shares of stock in banks and loan and trust or investment companies should be "listed and assessed" by the county assessor "as intangible property at 70 per cent. of the mill rate at which tangible property is assessed in the taxing district where the principal place of business of such

association, bank or company is located." Is the act of 1925 in violation of section 5219, Rev. St. U. S. (1878) and section 1, article VIII of the Constitution of this state? We are not concerned in the case before us whether or not the act is invalid as applied to national banks, and we will, therefore, confine ourselves to the question whether it violates the state Constitution. It will be observed that the act first provides for the taxation of corporation shares or stock at 5 mills upon its actual value, and then provides that the shares of stock of banks and loan and trust or investment companies shall be "listed and assessed" at 70 per cent. of the mill rate at which tangible property is assessed. If by this language the legislature intended that the capital stock or shares of banks should be taxed at a rate equal to 70 per cent. of the taxes levied upon tangible property, then a different rate of taxation is provided for the same class of property, as related to banks, from that levied against the shares of stock of other corporations, and is equally in violation of the constitutional requirement of uniformity as to class. It may happen that 70 per cent. of the rate of taxation upon tangible property will be precisely 5 mills upon the dollar, in which event no harm would be done, but the probability of such an event is ephemeral, and is purely a matter of chance. If the application of the 70 per cent. rate should exceed 5 mills upon the dollar of valuation, or be less than 5 mills, in either event the rule of uniformity would be violated. In the instant case the application of the 70 per cent. rate resulted in the taxation of the shares in question at the rate of 29.2 mills whereas the rate of assessment was 5 mills on all other corporate stock or shares except banks, loan and trust, or investment companies. We are unable to perceive that the defects of the statute of 1922 have been remedied by the act of 1925, and are constrained to hold that the last named act is unconstitutional for the same reasons for which the former was held invalid.

The taxes equitably due upon the shares of stock of the Ord State Bank at the rate of 5 mills upon the dollar of

the actual valuation as assessed is the sum of $99.10, as to which no complaint of invalidity is made; but it is contended by the receiver that no part of the taxes in question is a charge upon the depositors' guaranty fund. In *Farmers State Bank v. Nelson,* 116 Neb. 541, we held: "It is the duty of the guaranty fund commission lawfully in control of a state bank, out of the assets thereof, to pay taxes lawfully levied upon the intangible property of such bank as a demand having priority to rights of the depositors and creditors it represents."

The taxes in question, so far as valid, are a lien upon the assets of the bank in the hands of the receiver, and it was his duty to pay them. Instead of paying them, and before any opportunity for filing claims against the bank was presented, the receiver, with the consent and approval of the court and the department of trade and commerce, sold and delivered all of the assets of the Ord State Bank to the State Bank of Ord, leaving nothing in his hands with which these taxes could be paid. In *State v. American State Bank,* 114 Neb. 740, we held that, where assets of the bank sufficient to pay taxes were in the hands of the receiver and were used for the payment of depositors, it was not error for the court to order the taxes paid from the guaranty fund. This case was cited with approval and followed in *Farmers State Bank v. Nelson, supra.* It does not appear from the record in this case what was the value of the assets of the Ord State Bank which came into the hands of the receiver; but it is conceded that all of its assets, real and personal, were turned over to the receiver and sold to the State Bank. Under these circumstances, in the absence of any allegation that the assets so received were insufficient to pay the taxes, we are entitled to assume that they were so sufficient.

We conclude that the district court erred in sustaining the demurrer to the return and answer of the receiver; that the taxes in question in excess of $99.10 are invalid and not a lien upon the assets of this bank; that the remainder of said taxes, $99.10, with interest at 10 per cent. from

December 1, 1926, were a valid lien upon the assets of the bank, and that, in the absence of sufficient assets remaining in the hands of the receiver to pay the same, they were a charge upon the depositors guaranty fund.

It is therefore ordered that the judgment of the district court be reversed and proceedings remanded, with instructions to enter judgment in favor of the claimant for $99.10, with interest at 10 per cent. from December 1, 1926, and order the same paid out of the depositors' guaranty fund.

REVERSED.