BROWN v. AMERICAN BONDING CO. OF BALTIMORE, MD.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1914.)

No. 2289.

SUBROGATION (§ 7*)—SURETY—RIGHTS OF CREDITOR.

Where a state treasurer filed a claim against the receiver of an insolvent bank for unpaid deposits as a general creditor and the bank's surety paid the balance of such claim and took an assignment thereof from the state, the surety's right was limited by the rights derived from the particular claim so filed, and it was therefore not subrogated to the right of the state to priority of payment, if any.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. § 7.*

Nature and theory of right of subrogation, see note to Merchants' & Miners' Transp. Co. v. Robinson-Baxter-Dissosoway Towing & Transp. Co., 113 C. C. A. 434.]

Appeal from the District Court of the United States, for the District of Montana; George M. Borquin, Judge.

Action by the American Bonding Company of Baltimore, Md., against Arthur H. Brown, as receiver of the First Trust & Savings Bank of Billings, Mont. Judgment for plaintiff, and defendant appeals. Reversed.

Loud, Collins, Brown, Campbell & Wood, of Billings, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for appellant.

Walsh, Nolan & Scallon, of Helena, Mont., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The question in this case is the alleged right of the appellee (complainant in the court below) to be subrogated to an alleged priority which it claims that the state of Montana had in the assets of the insolvent bank of which the appellant is receiver, over the general creditors of the bank. The case was heard upon the bill and answer, the material allegations of the former being expressly admitted by the latter. Those allegations are, in substance, that while the bank was carrying on its business the state of Montana was one of its depositors, having $25,000 of its money deposited therein, as security for the repayment of which (and such other sums as might be so deposited by the state) the appellee bonding company had previously executed to the state, at the request of the bank, a bond in the sum of $10,000; that prior to June 14, 1910, the bank became and thereafter remained insolvent, and that on the day mentioned a receiver was appointed of all of its property and effects, in a suit brought against it by the state of Montana in one of its courts; that on the 15th day of December, 1910, the said indebtedness to the state had been reduced to $10,000 by payments thereon; and that on the last-mentioned date the receiver issued this certificate to the state:

"Receiver's Certificate of Proof of Claim.

"#868.                                                    Receiver's Office,

"Billings, Montana, Dec. 15, 1910.

"This is to certify that Elmer E. Esselstyn, as Treasurer of the State of Montana, has this day made legal and satisfactory proof that he is a gen-

eral creditor of the First Trust and Savings Bank of Billings, Mont., to the amount of ten thousand ($10,000.00) dollars, and ——— cents, upon the following claims, to wit:

|  | Dollars. | Cents. |
|---|---|---|
| First mortgage bonds..................................... |  |  |
| Time certificate of deposit No. ——— issued by the First Trust and Savings Bank of Billings, Mont................ |  |  |
| Unpaid draft No......................................... |  |  |
| Protest fees on draft No................................. |  |  |
| Savings account No. 1002, the First Trust and Savings Bank of Billings, Mont.................................... | 10,000 | 00 |
| Interest on Time Certificate of Deposit No................ |  |  |
| Unpaid Cashier's Check No............................... |  |  |
| Total .......................................... | 10,000 | 00 |

"And he, or the lawful assignee of this claim will be alone entitled to the dividends thereon.

"No assignment of this claim, or any portion thereof, will be recognized in the payments of dividends, unless notice of such assignment is given to the receiver and entered upon his books before such dividends are declared, as evidenced by his indorsement hereon. This certificate is to be surrendered to the receiver upon the payment of the final dividend.

"S. G. Reynolds,
"Receiver of the First Trust & Savings Bank of Billings, Billings, Montana."

The bill further alleged that because of the bond the appellee thereupon paid to the state the sum of $10,000, whereupon "the said state of Montana, by its State Treasurer and Attorney General, appearing as attorneys for it in the said cause," in which the receiver was appointed, "assigned and transferred to your orator its said claim against the said bank, evidenced by the certificate aforesaid, and your orator is now the owner and holder of said claim, and has succeeded and is subrogated to the rights of the state of Montana against the said bank"— the assignment being in the following words:

"Billings, Montana, Dec. 15, 1910.
"For value received I hereby assign the within claim to the American Bonding Company of Baltimore, Maryland.
"Elmer E. Esselstyn, State Treasurer,
"By Albert J. Galen, Attorney General for Montana.
"Witness: S. G. Reynolds."

The bill then alleged that under the laws of the state of Montana, the said state has and at all times had a preferred "right to be paid in full in preference to all other creditors of the said First Trust & Savings Bank, and that by virtue of the facts hereinbefore set forth your orator has a right to be paid the full amount of the said claim so evidenced by the said certificate in full, in preference to the claims of all other creditors," which alleged right the receiver refuses to recognize.

The court below sustained the contention of the state that it is entitled to priority over the general creditors of the insolvent bank upon the ground "that the state, having adopted the common law of England, succeeds to or is vested with a like prerogative of the crown," and that by paying to the state the amount of its bond the surety company became subrogated to such right of the state.

It is conceded that the state of Montana has no statute giving to public debts any priority over those due other creditors, but that state has these statutory provisions in respect to the common law:

"Sec. 3552. Common Law, When Rule of Decision.—The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this state, or of the Codes, is the rule of decision in all the courts of this state."

"Sec. 8060. No Common Law in This State.—In this state there is no common law in any case where the law is declared by the Code or the statute; but where not so declared, if the same is applicable and of a general nature, and not in conflict with the Code or other statutes, the common law shall be the law and rule of decision."

Revised Codes of Montana 1907.

It is contended on the part of the appellant that if the common-law prerogative of sovereignty ever existed in Montana by reason of the above-cited sections of the statutes, it was subsequently abrogated by these subsequent provisions of its Revised Codes:

"Sec. 6214. The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. The Code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice."

"Sec. 6123. A creditor, within the meaning of this title, is one in whose favor an obligation exists by reason of which he is or may become entitled to the payment of money.

"Sec. 6124. In the absence of fraud every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract.

"Sec. 6125. A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another."

"Sec. 6140. In all assignments of property made by any person, association, corporation, copartnership, chartered company or corporation, to trustees or assignees on account of inability of the assignor or assignors at the time of the assignment to pay his or their debts, or in proceedings in insolvency, the wages of the miners, mechanics, salesmen, servants, clerks or laborers employed by such assignor or assignors for services rendered within sixty days immediately previous to such assignment, not to exceed two hundred dollars for each person, are preferred claims, and must be paid by such trustees or assignees before any other creditor or creditors of such assignor."

But did the prerogative right which constitutes the basis of the state's claim ever in fact exist? All of the states with the exception of Louisiana have adopted, in one form or another, the common law of England except where inconsistent with their Constitutions and statutes, and yet nearly all of them have statutes giving preference to taxes, rates, and other debts due the state, over the debts of the citizen, See 26 Am. & Eng. Encyc. of Law (2d Ed.) p. 479. It is there further truly said that:

"Whether a state, in the absence of positive enactment, is entitled to the priority claimed by the crown under the common law appears to be not well settled."

See, on the one side, State of Maryland v. Bank, 6 Gill & J. (Md.) 205, 26 Am. Dec. 561; State v. Mayor, 10 Md. 504; In re Carnegie Trust Co., 151 App. Div. 606, 136 N. Y. Supp. 466; same case on appeal, 206 N. Y. 390, 99 N. E. 1096; Hoke v. Henderson, 14 N. C. 12; U. S. Fidelity & Guaranty Co. v. Rainey, 120 Tenn. 357, 113 S. W. 397; Seay v. Bank of Rome, 66 Ga. 609; State v. Foster, 5 Wyo. 199, 38 Pac. 926, 29 L. R. A. 226, 63 Am. St. Rep. 47; and, on the other

side, Zimmerman, Commissioner of Banking, v. Chelsea Savings Bank et al., 161 Mich. 691, 125 N. W. 424; State v. J. M. Harris, 2 Bailey (S. C.) 598; Klinck, Administrator, v. Keckley, Executor, 2 Hill Eq. (S. C.) 256; Potter et al. v. Fidelity & Deposit Co. of Maryland, 101 Miss. 823, 58 South. 713.

Notwithstanding the Carnegie Trust Company Case above referred to, we find the Circuit Court of Appeals of the Second Circuit saying, in Central Trust Co. v. Third Avenue R. Co., 186 Fed. 291, 292, 110 C. C. A. 1, 2:

"We regard it as settled law in this state that the state does not succeed as sovereign to all the prerogatives of the British crown, among others the right to a preference for debts due it over all other creditors. It has been expressly held that taxes due the state have no priority of payment out of a fund in court for distribution, unless the priority was expressly given by statute, or unless the fund has come into court impressed with a priority for the tax. Wise v. Wise Co., 153 N. Y. 507, 47 N. E. 788. O'Brien, J., said:

"'The contention of the learned counsel for the receiver of taxes rests upon a somewhat novel proposition. It is that from the most ancient times the courts of England have recognized the right of the sovereign, representing the state, to priority of payment over all other claims, though they may have been secured by specific liens; that the people of this state have succeeded to all the prerogatives of the British crown as parts of the common law suitable and applicable to our condition. In support of his contention he has called our attention to various authorities in England and in this country. Giles v. Grover, 9 Bing. 130–285; 2 Bac. Abr. p. 363; Toller on Ex., c. 2, p. 259; In re Columbian Ins. Co., 3 Abb. Dec. (N. Y.) 239; Central Trust Co. v. N. Y. C. & N. R. R. Co., 110 N. Y. 250, 18 N. E. 92, 1 L. R. A. 260; Union Trust Co. v. I. M. R. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963; U. S. v. State Bank of North Carolina, 6 Pet. 29–34, 8 L. Ed. 308. The general doctrines contained in these cases would seem, upon a superficial view, to go far in support of the contention upon which this appeal is based, although it should be observed that a very important fact present in this case was absent in the cases cited, and that was the existence of a specific lien at law upon the personal property acquired by a levy under valid legal process in the hands of the sheriff.

"'On a closer examination, however, it will be found that they do not sustain the broad principle contended for. They undoubtedly go far enough to sustain the principle that, when a fund is in the hands of the court or the trustee of an insolvent person or corporation, a claim due to the government upon a debt or for taxes is entitled to a preference in certain cases or under certain circumstances. The prerogatives of the crown with respect to the imposition and collection of taxes was the subject of a long and obstinate dispute in England between the people and the executive. Without attempting to ascertain whether the limits of this prerogative have ever been judicially defined with anything like precision, it is entirely safe to say that many of the utterances of the English courts on the subject to be found in the books cannot be considered law here, or even in that country. The great contest with respect to the right of the sovereign to levy and collect what was called "ship money" illustrates the extent to which the claim of prerogative was pushed, the nature of the dispute, and the conflicting views of the judges. 3 Howell's State Trials, 826–1254.

"'In this country the right of the government to be preferred in the distribution of such a fund exists, under the authorities, in two cases: (1) Where the preference is expressly given by statute, as was the case in U. S. v. State Bank of North Carolina, supra. (2) Where, before the fund has come to the hands of the receiver or trustee, a warrant or some other legal process has been issued for the collection of the tax or debt, and the fund has come to his hands impressed with a lien in favor of the government in consequence of the proceedings for collection, as was the case in the Columbian Ins. Co. Receivership, 3 Abb. Dec. (N. Y.) 239. But where there is no statute

giving the preference, and no warrant or process has been issued for the collection of a tax on personal property, there is no controlling authority for preferring such a claim over specific prior liens in favor of creditors, obtained by levy under attachments or executions. Roraback v. Stebbins, 4 Abb. Dec. (N. Y.) 100.' "

By section 722 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 582) it was provided that:

"The jurisdiction in civil and criminal matters conferred on the district and circuit courts, by the provisions of this title, and of title 'Civil Rights,' and of title 'Crimes,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the Constitution and statutes of the state wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

The obligations to the respective parties here litigating are manifestly "civil obligations." Guarantee Co. v. Title Guaranty Co., 224 U. S. 152, 160, 32 Sup. Ct. 457, 56 L. Ed. 706.

In United States v. Bank of North Carolina, 6 Pet. 29, 35 (8 L. Ed. 308), the Supreme Court said:

"The right of priority of payment of debts due to the government is a prerogative of the crown well known to the common law. It is founded, not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal prerogative may be clearly traced in these statutes, and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms."

If, as there expressly held by the Supreme Court, the priority of debts due the government of the United States does not stand upon any sovereign prerogative, but is exclusively founded upon their own statutes, we are unable to understand how the right of priority of payment of debts due a state can be founded upon such a prerogative. Surely no state can have any greater sovereign right than the general government of the entire country.

But even if it be conceded that the state of Montana has the right here claimed for it, and it be further conceded that a private party can be subrogated to such prerogative right, which is by no means certain—see Commissioner of Banking v. Chelsea Savings Bank et al., 161 Mich. 704, 127 N. W. 351, where the negative was distinctly adjudged by the Supreme Court of Michigan, and Guarantee Co. v. Title Guaranty Co., supra, where the Supreme Court assumed, for the purposes of the case but without deciding, the affirmative of the question—still, we are of the opinion that upon the facts made the basis

of the bill in the present case, the appellee cannot be properly held to have been subrogated to the prerogative right claimed, for the reason that the suit is based upon the alleged proof of the state as a general creditor of the insolvent bank and a written assignment of *that* claim to the appellee.

For the reasons stated the judgment of the court below is reversed.