Marshall, C. J.
 

 The Union Savings Bank Company, of Yorkville, Ohio, was a successful bidder under the depositary law for a deposit of state funds, and to secure the deposit, as required by law, gave a bond signed by the 'Fidelity & Casualty Company, of New York, guaranteeing the return of the funds deposited, with interest thereon. Later the superintendent of banks took possession of the bank’s assets for liquidation, and at that time the bank had $25,000 of state funds. Demand was made upon the surety company by state officials to make payment of the amount due to the state under the bond, and
 
 *126
 
 thereupon payment was made. The surety company presented the superintendent of banks a claim to have its obligation allowed as a preferred claim against the assets of the bank, and, upon the claim being disallowed, this action was brought in the court of Common Pleas of Jefferson county, praying an order on the superintendent of banks for allowance and payment to the surety company of its claim in full before payment of claims of general creditors. Judgment of the trial court was entered, upon the court sustaining defendant’s demurrer to the petition. The questions presented are: First, whether the state of Ohio by virtue alone of its sovereignty has a prior right to payment of its claim in full out of the assets of an insolvent bank in process of liquidation before payment of claims of general creditors ; and, second, whether the surety company, having paid the claim of the state in full, under its bond, is subrogated to the state’s right to priority, if any, in the distribution of the bank’s assets.
 

 It will be stated at the outset that the conclusions we have reached upon the first proposition make it unnecessary to consider the second proposition.
 

 The surety company makes the broad assertion that claims due to the state, however arising, are entitled to priority of payment, and that this is a prerogative right arising out of sovereignty. It becomes important, therefore, to inquire at the outset as to the meaning and characteristics of sovereignty. In it largest sense, and when applied to an absolute monarchy, it means supreme, absolute, uncontrolled, power to govern. Under any government of limited powers, sovereignty is the supreme power which governs the body politic. The quality and character
 
 *127
 
 istics of sovereignty naturally depend upon the source of the power. Under monarchical government in remote periods the monarch claimed infallibility and divine rights. Such notions are so remote from the notions of sovereignty entertained under our own republican form of government that it would be idle to discuss or even refer to the sovereign powers of monarchical governments. The governments of the several states and the federal government are each sovereign, and yet the sovereignty of the states is essentially different from the sovereignty of the federal government. The one is less supreme than the other. The Supreme Court of the United States, in
 
 Chisholm, Exr.,
 
 v.
 
 Georgia,
 
 2 U. S. (2 Dall.), 419, 1 L. Ed., 440, this being the first case arising under the new Constitution, relating to sovereignty, laid down some fundamental principles which apply to the instant case. The court declared in that case that sovereignty is the right to govern. It drew the distinction between the sovereignty of European nations, which is generally ascribed to the ruler, and the sovereignty of our own nation, which rests with the people; pointing out that in those countries the sovereign administers the government, while in this country this is never true; that our citizenship constitutes the sovereignty and public officials are their agents. It was further declared, in substance, that their rulers have personal powers, dignities, and preeminences, while our officials have no such attributes, except those.which are conferred by the people. In other words, all power is inherent in the people, and the government has such sovereign power as the people have conferred upon it. That case clearly draws the distinction between citizens who have
 
 *128
 
 equal political rights under our Constitution and the subjects of foreign countries whose rights are universally subordinate. Our forefathers in framing the new Constitution omitted to safeguard the rights of the people, and that omission was speedily corrected under the new Constitution by adopting a Bill of Rights in which they were elaborately set forth. One of the most familiar attributes of sovereignty is the right of eminent
 
 domain;
 
 that is to say, the right of the sovereign to use the property of its citizens where the public good or necessity requires, but it is guaranteed that no property can be taken without compensation being first paid. We know of no rights of the sovereign state which can be expressed or enforced where such enforcement results in trampling upon the rights of the individual citizen. Counsel have urged, and it must be conceded, that the principles of the common law as established in England are applied throughout the states of the Union in so far as those principles are applicable to our institutions. However generally they may have been applied in the past, it does not follow that they have universal application.
 

 A distinction must be made between sovereignty and the rights of sovereignty. The rights of sovereignty are those which are deemed essential to the existence of government. Without attempting -to enumerate all such rights, it may be stated that they include the right of eminent domain, the right to levy taxes and assessments, to impose penalties, to inflict forfeitures, fines, and punishments, and to collect revenues for the support of the government. Without all such attributes the government could not exist, because no government can successfully func
 
 *129
 
 tion without expense, and therefore the right to collect revenues; and no government can long endure without enforcing its authority, and therefore the right to impose fines, penalties, and punishments.
 

 The diligence of counsel has brought to the attention of the court a great many authorities dealing with the question of the nature and extent of sovereign rights in the governments of the different states of the Union, and whether such rights result only from statutory and constitutional provisions. An examination of these authorities discloses that the courts differ in their notions of the source, nature, characteristics of sovereignty and sovereign rights. We shall not attempt to reconcile those decisions. Neither do we find it necessary in the instant case to. declare whether or not the rights of sovereignty, in a broad sense, can exist in the state of Ohio without being conferred by legislative enactment. It is not necessary to decide in the instant case the extent of those essential sovereign rights which are necessary to the very existence of government .in the state of Ohio. It is quite certain that many of the well-recognized essential sovereign rights do exist as the result of constitutional and statutory enactment. The Ohio Bill of Bights provides for the familiar sovereign right of eminent domain, and statutes make provision for giving the state preference in the collection of taxes and revenues and certain fines and forfeitures, but we shall not take the trouble to inquire whether in each and every instance of essential sovereign rights our constitutional framers or our General Assembly have made the necessary provisions for their recognition and enforcement. It'is sufficient to say in the instant case that the deposit
 
 *130
 
 of surplus funds of the state in a banking institution, in order to receive a stipulated rate of interest thereon, is not one of those essential prerogative rights without the exercise of which the state could not exist. In
 
 State
 
 v.
 
 Executor of
 
 Buttles, 3 Ohio St., 309, it has been decided:
 

 “When any officer or agent of the state of Ohio, charged by law with the custody and disbursement of public money, delivers any part of it to a private person or a corporation, for use, to be repaid with interest at a future time, though the bond or other instrument evidencing the obligation to repay may denominate such disposition of the money a ‘deposit,’ it is nevertheless in substance and legal effect a loan, which upon its face establishes the relation of borrower and lender.”
 

 While there is no decision of any court in Ohio which attempts to define the characteristics or the limitations upon sovereignty or sovereign rights, this case certainly throws some light upon the question whether or not the deposit of money of the state in a banking institution for security, and to receive a rate of interest, is or is not an exercise of sovereignty. That case is not parallel to the instant case, neither can it be said that the principles therein declared are decisive of the instant case, and yet if the deposit of state funds under ,the provisions of Section 321
 
 et seq.,'
 
 General Code, is to be construed as a loan, that ease has much in common with the instant case. In that ease it was declared by Judge Ranney:
 

 “The policy of this state, in view of all our statutes regulating the collection, safe-keeping and disbursement of the public money, has always been to
 
 *131
 
 prohibit its officers and agents from loaning or dealing in its funds, on public or private account; a few exceptions where officers have been authorized by special statutes to loan or otherwise improve particular funds, only make the general rule the more manifest.”
 

 In the same case it was further stated in the syllabus :
 

 “When the state appears in her courts as a suitor, to enforce her rights of property, she comes shorn of her attributes of sovereignty, as a body politic, capable of contracting, suing, and holding property, subject to those rules of justice and right, which in her sovereign character she has prescribed for the government of her people. ’ ’
 

 While the state has not sued in the instant case, the surety company is claiming to occupy the position of the state, and claims to succeed to all the rights of the state, including sovereign prerogatives, and it follows, if the state could not maintain such an action without waiving sovereign rights, that by the same token the surety company claiming as assignee of the state, and under rights of subrogation, must also be considered to be shorn of any prerogative rights which the state might otherwise assert. That no sovereign prerogatives can be asserted where the government is acting in its proprietary capacity has been so often asserted by the courts of this state that it is not necessary to cite or discuss the authorities which support that proposition. It is only necessary to inquire whether or not in a given case the government is acting in the exercise of a governmental function.
 

 Under the authorities and upon principle we are
 
 *132
 
 of the opinion that the deposit of state funds in banking institutions, upon a stipulated rate of interest, and with security, is an ordinary business transaction entirely beyond the domain of those essential functions which are defined as the exercise of sovereignty. As was stated by Judge Ranney in
 
 State
 
 v.
 
 Executor of Buttles, supra,
 
 the Legislature had the power to lend the funds of the state. It has exercised this power in Section 321
 
 et seq.,
 
 General Code. The case therefore turns upon the interpretation of those sections. The Legislature having made detailed provision as to the loan of idle state funds, and having provided for receiving interest thereon, such transactions on the part of the state differ in no wise from transactions where both parties to the contract are individuals. Without quoting or discussing those statutes in detail, it is apparent that it was not intended that any priorities should be given to the state, but that, on the contrary, the officials making such deposits were required to obtain such security as would insure the safe return of the funds with interest. The maxim,
 
 “Expressio unius est exclusio alterius,”
 
 applies. The Legislature having made no provision for priority, it will be presumed that the legislative intent has been exhausted. Clearly, the Legislature had the power to provide for priorities, and, not having expressly made such provision, all other depositors in the banks where state funds are'deposited have a right to assume that their deposits are as secure as all other deposits. To so interpret the statutes as to permit priorities in favor of the state would require that matter be read into the statues which the Legislature has not written in. The surety companies re
 
 *133
 
 eeive compensation for the risk assumed, and no reason is perceived for relieving such companies of all risk by permitting them to have priority of payment out of the funds of the depositary. Priority of payment to the state in its practical results would be equivalent to a lien upon all the deposits of individuals, and would impose upon individual depositors the risk which the surety contracted to assume, and for which it is compensated by the payment of a premium. No bank could afford to accept deposits of state funds under such an interpretation of the statutes, because all individual depositors would assume the risk of the failure of the bank, risk which the Legislature clearly intended to impose upon the surety company. So far from the bardes finding it profitable to have state funds and being able to pay interest thereon, the banks would refuse all such deposits, even without payment of interest.
 

 To the effect that the state is no stranger to the subject of priorities, it should be stated that in the settlement of decedents’ estates it is provided that public rates and taxes are payable in priority to general creditors, though they are subordinated to funeral expenses, debts of last illness, expense of administration, allowance to the widow, and claims entitled to priority under the laws of the United States. In settlement of estates of insolvent persons taxes due to the state are given full priority of payment.
 

 It is not necessary to discuss the matter of subrogation further than to say that the surety company is entitled to be subrogated to such rights as might be asserted by the state, viz., to present the claim for allowance and payment of dividends on a parity with
 
 *134
 
 claims of -unsecured creditors. The Common Pleas Court and the Court of Appeals having denied priority to the surety company, their judgment must be affirmed.
 

 Judgment 'affirmed.
 

 Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.