(No. 21166. <span style="background:black"></span>)

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE MARION TRUST AND SAVINGS BANK.— (GRANT CRUSE, County Collector, Appellee, *vs.* O. A. JAMES, Receiver, Appellant.)

*Opinion filed February 19, 1932.*

STONE & FOWLER, for appellant.

J. ROY BROWNING, State's Attorney, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The Marion Trust and Savings Bank was closed by the Auditor of Public Accounts on April 12, 1930. Thereafter the bank was in charge of O. A. James, a representative of the Auditor, until January 8, 1931, when he was appointed receiver to liquidate its affairs. On January 12, 1931, a bill in chancery was filed in the circuit court of Williamson

county on relation of the State Auditor for the purpose of liquidating the affairs of the bank. On March 11, 1931, Grant Cruse, as county collector of taxes of Williamson county, filed an intervening petition in the same court, alleging that at the time the bank closed there was on deposit in his name, as county collector, the sum of $75,030.51, which represented undistributed taxes collected by him in which the State of Illinois had an interest, and praying that the receiver be ordered to pay this deposit as a preferred claim. The answer of the receiver denied that any deposit in the bank at the time it was closed represented collections made by Grant Cruse as collector of taxes, and further denied that any such deposit represented undistributed taxes in which the State of Illinois had an interest. The answer further alleged that prior to the appointment of the receiver neither Grant Cruse nor the People of the State, by legal proceedings or otherwise, had asserted or attempted to assert a preference or priority, and for that reason any preference that might have existed was waived. A hearing was had before the chancellor and a decree entered finding that Cruse, as county collector, was entitled to priority in the sum of $74,775.35, that being the amount found to have been on deposit and entitled to preference on the day the bank closed. From that decree the present appeal was taken by the receiver.

The evidence shows that Grant Cruse in September, 1929, opened a checking account in the Marion Trust and Savings Bank in the name of "Grant Cruse, County Treasurer." Some time before the bank closed this account was changed on the books by the cashier to "Grant Cruse, Co. Tax Collector." On March 19, 1930, there was a balance in this account of $708.95. According to the undisputed testimony of the collector and his deputy this represented redemption money collected from tax forfeitures, penalties, interest and costs for previous years, undistributed at that time. On March 19, 1930, Cruse began collecting taxes

for the tax year 1929, having previously announced through the newspapers that as collector he was ready to receive the taxes at designated places. The books were opened for the payment of taxes of five near by townships at the collector's office in Marion. Between March 19 and April 12, the date the bank closed, eight deposits were made in this account by the collector. The uncontradicted testimony of the collector and his deputy is that these deposits represented taxes levied and collected for the tax year 1929 for State, county, road and bridge, city and village, district school, high school, rock road, special assessments and dog taxes, and that at the time the bank closed, the entire balance of $74,775.35, including the item of $708.95 above mentioned, represented money collected as taxes which had not been distributed to the various taxing bodies to which it belonged.

We have carefully examined the record and find no evidence which controverts the principal finding of the chancellor that the sum of $74,775.35 was on deposit to the credit of Grant Cruse, county collector, at the time the bank closed, and that such sum was then undistributed tax money belonging to the State and its various political subdivisions. The fund of $708.95 on deposit on March 19 was shown to have been money collected to redeem from back taxes certain property forfeited to the State. This item included some interest and printer's fees, but this fact did not change the character of the fund, which at that time had not been distributed. This court is committed to the doctrine that all taxes collected belong to the State until their distribution. (*People* v. *Farmers State and Savings Bank,* 338 Ill. 134.) As the political divisions of the State, whether counties, towns, cities or school districts, are subject to the supervision and control of the State, their property and revenue are subject to the control of the legislature, and, until distribution to the various municipalities and political subdivisions, money collected for taxes is the property of the

State. (*People* v. *Farmers State Bank,* 335 Ill. 617.) The preference of the State is not limited to that portion of the taxes which is to be paid the State as a State tax but extends to all taxes of every kind and character which are undistributed. *People* v. *Bank of Chebanse,* 340 Ill. 124.

It is contended by the appellant that because the total deposit may have contained some special assessments and dog taxes, the whole claim, or at least those portions of it, should be treated as a common claim. The statute provides (Cahill's Stat. 1931, chap. 24, par. 199,) that it shall be the duty of the county collector to collect special assessments in the same manner as he collects other taxes and that the general revenue laws of the State apply thereto. Whether the collector receives from a tax-payer his State taxes, his school taxes or his special assessments, he is acting under statutory authority as an agent of the State of Illinois, and the money collected, while in his hands and undistributed, is the property of the State. There is no difference between special assessments and taxes levied by a township or a school district or a park board. They are all public revenues assessed and levied to carry on the government, collected for all divisions of government by one individual, the county collector, who, while so acting, proceeds under the general Revenue act of the State and is subject to the control and will of the legislature. Under the authority of *People* v. *Farmers State Bank, supra,* the money collected for special assessments, while it remains undistributed in the hands of the county collector, is the property of the State. The same rule applies to dog taxes. The statute provides (Cahill's Stat. 1931, chap. 8, par. 111,) that if the assessor does not collect the dog tax at the time he makes the assessment it is the duty of the county clerk to charge such amount on the tax books which he delivers to the county collector, "which fee shall be collected at the same time, and in the same manner, as taxes upon personal property." Later, when he distributes the tax money on hand,

the collector is required to pay the fees collected for dog taxes into the county treasury, to be kept in a special fund. Thus it appears that dog taxes are collected by the county collector along with other taxes and are entitled to no different treatment until segregated out of the general deposit into a special fund.

It is urged by appellant that since the county collector did not assert his right to a preference during the eight months intervening between the closing of the bank and the appointment of the receiver the prerogative right of the State to preference over the debts of other creditors was lost, and that the appointment of a receiver had the legal effect, under the common law, of divesting title of a creditor to the fund before its preference was asserted. This question, so far as we have been able to find, has not been presented to this court in any previous case. As stated above, in conformity with what it believed to be the greater weight of judicial authority, this court has held that undistributed tax money of the State in the hands of an insolvent bank is entitled to preference over other creditors who are not protected by a special lien. This preference is founded on the inherent right of a sovereign to have its revenue protected for the general public good. This right is based upon the common law and requires no statute for its support. Unless some provision of our statutes can be found which clearly evinces a legislative intent to abandon, repeal or waive this preference right of the State it is the duty of the courts to preserve rather than to defeat it. (*United States Fidelity and Guaranty Co.* v. *Bramwell*, 217 Pac. (Ore.) 332.) It is not denied by the appellant that the State's sovereign right to a preference existed in the deposit at the time the bank closed, nor is it contended that the closing of the bank extinguished such preference. This preference was therefore a continuing right existing in favor of the State both before and after the closing of the bank. It was a right which was neither created nor extinguished by the bank's

closing, and it was so continuing at the time the receiver was appointed. Did the appointment of the receiver have the effect of extinguishing this right of preference?

This same question was presented in the case of *American Bonding Company of Baltimore* v. *Reynolds,* 203 Fed. 356. The State of Montana was a creditor of an insolvent bank and after the appointment of a receiver the priority was asserted. The receiver contended, as the appellant contends in this case, that the priority was lost because the title of the bank had been divested before the preference was asserted. The court said: "This law of priority is not that of the ancient common law with all its rigorous methods of enforcement, but is that of the modified common law as it was when adopted by Montana. The right thereof can - be exercised so long as the debtor's title to the property out of which it is sought to make the public debt is not divested. And this is true whether the property is levied upon and seized in the debtor's possession or is in *custodia legis* when the priority is asserted. (See *Middlesex Freeholders' case,* 29 N. J. Eq. 268.) At common law, even though another creditor has procured levy and seizure of the goods of the king's debtor at any time before sale under the writ, the king's prerogative or priority prevails if asserted. Although the bank here involved is in the hands of a receiver appointed on the State's petition, its title to its property has not been divested. While the receiver is statutory to the extent that he is appointed by virtue of statutory authority under circumstances not of themselves warranting the appointment by a court of chancery, yet he has no greater or other rights and powers than those of a chancery receiver, for the statute creates none. A court of chancery's receiver does not take title to the property involved, but only possession as an officer of the court and to dispose thereof as the court directs. * * * The State has not waived its priority. The statute made it the duty of the State to petition for a receiver for the protection of

all interested parties. Therein is nothing annulling the law of priority of public debts and the discharge of this statutory duty is not inconsistent therewith. When a court of chancery takes possession of property by its receiver it is familiar law the owner's title is not divested, and in administration thereof the law of priorities and preferences governs in the payment of debt."

The Supreme Court of the United States in the case of *Marshall* v. *New York*, 254 U. S. 380, held that the priority of the State was not affected by the appointment of a receiver for the debtor. The court said: "At common law the crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor or had been placed in the possession of a third person or was in *custodia legis*. The priority could be defeated or postponed only through the passing of title to the debtor's property, absolutely or by way of lien, before the sovereign sought to enforce his right."

In the case of *State Bank of Commerce* v. *United States Fidelity and Guaranty Co.* 28 S. W. (2d series) 184, a preference was asserted for a debt due the State of Texas from an insolvent bank which was in the hands of the State bank commissioner. In that case it was contended that the priority was lost because it was not asserted before the assets of the bank passed into the hands of the banking commissioner. The court said: "While all the courts agree that the State loses this preference right when the title to the assets of the insolvent debtor passes to third parties or when such assets are mortgaged to secure other debts, quite a number of them hold that this right is not lost by the mere passing of the assets of the bank into the hands of a receiver in chancery or a commissioner of banking. (*Marshall* v. *State of New York*, 254 U. S. 380, 41 Sup. Ct. 143, 145, 65 L. ed. 315; *Maryland Casualty Co.* v. *McCon-*

*nell,* 148 Tenn. 656, 257 S. W. 410, 412; *United States Fidelity and Guaranty Co.* v. *Central Trust Co.* 95 W. Va. 458, 121 S. E. 430, 431; *Denver* v. *Stenger,* (C. C. A.) 295 Fed. 809; *Fidelity and Deposit Co.* v. *McClintock,* 68 Mont. 342, 218 Pac. 652.) In the case first above referred to, Justice Brandeis, in rendering the opinion, said: 'Whether the priority enjoyed by the State of New York is a prerogative right or merely a rule of administration is a matter of local law. Being such, the decisions of the highest court of the State as to the existence of the right and its incidents will be accepted by this court as conclusive. [Citing cases.] The priority of the State extends to all property of the debtor within the borders, whether the debtor be a resident or non-resident and whether the property be in his possession or in *custodia legis.* The priority is therefore enforceable against the property in the hands of a receiver appointed by a Federal court within the State. [Citing a number of cases.] * * * The State's right to be paid out of the assets prior to other creditors does not, as pointed out in *In re Tyler, supra,* * * * arise from an express lien on the assets existing at the time they passed into the receiver's hands. * * * The right of priority has been likened to an equitable lien. (*State, use of Phillips* v. *Rowse,* 49 Mo. 586, *supra.*) The analogous preference in payment given to claims for labor by State statutes, and to which the Bankruptcy act (11 U. S. C. A.) gives priority, have been described as being tantamount to a lien.' * * * Under our statute the banking commissioner is an administrative agent, who operates under the direction of the court having jurisdiction over the assets of the insolvent bank. Assets in his hands are regarded as in *custodia legis.* The property of the bank cannot be sold except by an order of the proper court.—*Kidder* v. *Hall,* 113 Tex. 49, 251 S. W. 497; *Chapman* v. *Clark,* Tex. Com. App. 276 S. W. 197; *Chapman* v. *Guaranty State Bank,* Tex. Com. App. 267 S. W. 690."

In the case of *United States Fidelity and Guaranty Co. v. Central Trust Co.* 121 S. E. (W. Va.) 430, a preference was sought against the funds of an insolvent bank in the hands of a receiver because a debt was due the State. The court, in construing the statute relating thereto, held that the appointment of a receiver did not affect the rights or priorities of creditors of an insolvent bank and that the State was entitled to its preference against the funds of the insolvent bank in the hands of the receiver. In *Maryland Casualty Co. v. McConnell*, 257 S. W. (Tenn.) 410, a similar question was before the Supreme Court of Tennessee, and it was there held that under the statute the "superintendent of banking has scarcely as much power as a chancery receiver," and the passing of the assets of an insolvent bank into the hands of the State banking department did not destroy the State's preference.

We shall not further lengthen this opinion by a discussion of the authorities submitted by appellant or of other minor points raised. From an examination of the cases cited we are satisfied that with few exceptions the courts of other States which have come to conclusions contrary to those herein expressed have done so because of the peculiar provisions of their own statutes. No issue is here presented which requires us to consider or interpret section 11 of the Banking act as amended and approved June 4, 1929.

In our judgment the preference of the State to undistributed tax money on deposit in the insolvent Marion Trust and Savings Bank was not lost by the appointment of a receiver. The rule recognizing such preference "has reference to the public good and should receive no strict nor narrow interpretation." *Denver v. Stenger, supra.*

The decree of the circuit court is affirmed.

*Decree affirmed.*