FIDELITY AND DEPOSIT COMPANY OF MARYLAND *v.*
BRUCKER ET AL.

[No. 26,128. Filed January 2, 1933. Rehearing denied
June 28, 1933.]

*Ralph K. Kane, Gideon W. Blain, Robert Hollowell,
Jr.,* and *Clarence R. Cowger,* for appellant.

*L. D. Carey, Ralph Scowden* and *Elliott, Weyl & Jewett,* for appellees.

*Ewbank & Dowden* and *Pickens, Davidson, Gause,
Gilliom & Pickens, amici curiae,* supporting appellant.

*James W. Noel, Hubert Hickam, Alan W. Boyd, Robert D. Armstrong, Ewing R. Emison, Pierre F. Goodrich* and *John Raab Emison, amici curiae,* supporting
appellees.

MARTIN, J.—The appellant surety company filed an intervening petition in the receivership of the Farmers State Bank of Monticello, seeking to have allowed a claim in the sum of $10,000, with priority of payment over general creditors. Its claim arose as follows: The bank petitioned the state board of finance to be designated as a depository of public funds (to the maximum amount of $20,000), filing with such application a "surety company bond of Depository of Public Funds" in the penal sum of $10,000, with appellant as surety thereon. The application and bond were approved and the state of Indiana deposited in the bank, in accordance with the law on the subject of depositories for public funds, the sum of $10,000 (of the state's general fund which had been raised by taxation), on which sum the bank paid interest (at rates ranging from 2 to 3 per cent per annum) as provided in its accepted proposal. Thereafter the bank became insolvent and in an action by the state on the relation of the bank commissioner against the bank, appellees Brucker and Loughry were appointed receivers thereof. The bank and the receiver having made default in the payment of the state's deposit, the state made demand upon the surety company for the sum of $10,000 which it paid to the treasurer of state. The surety company alleged in its intervening petition that:

"Said fund of $10,000 . . . was a public fund of the State of Indiana on deposit in said . . . bank under the laws of the State . . . and on account of the subsequent claim against the bank and the assets thereof now in the hands of said receivers, in favor of the State . . . which claim said State is lawfully entitled to have paid . . . out of the assets of said bank . . . before the payment of the claims of general creditors of the bank . . . there are no prior liens against the assets of the bank. . . . That on account of the failure of the bank to pay said sum . . . and the

payment of said sum by this petitioner as surety on said depository bond . . . (it) is entitled to be subrogated to all of the rights of the State . . . in . . . said claim . . . including said right of preperence . . . and is entitled to have this claim allowed in its favor as a preferred claim . . . and paid . . . out of the funds in their (receiver's) hands in advance of the payment of the general claims against the bank."

The receivers filed an answer in general denial to the intervening petition and trial was had by the court, the evidence being in the form of an agreed statement of facts. In addition to stating the facts substantially as related above, the stipulation set out that $125,000 of assets ($6,000 of which was cash) came into the hands of the receivers; that a 35% dividend (amounting approximately to $32,000) had been declared and paid to general creditors; that the receivers have on hands in cash and other assets more than enough to pay the surety company's claim in full as a preferred claim should it be allowed by the court as such and that neither the State nor the surety company have received any dividend or payment of any part of the $10,000.

The court found that the surety company was entitled to the allowance of its claim as a general claim only and not as a preferred claim and entered judgment on such finding. Appellants filed a motion for a new trial on the grounds that the decision was not sustained by sufficient evidence and was contrary to law, and that the court erred in overruling its motion to modify the judgment. The overruling of the motion for a new trial is relied upon here as error.

The principal question of law presented by this appeal (and the only one necessary to determine if it is answered in the negative) is, does the State of Indiana have a right of preference over the other depositors of an insolvent bank in the liquidation of its assets by receivers?

No preference or priority for the deposits of the State in banks is provided for by statute. The law governing depositories for public funds, ch. 222, Acts 1907 (as amended by certain acts of 1909, 1911, 1919 and 1925), §§12611-12635, Burns 1926, provided for the protection of public funds deposited (at interest) in banks by bonds (equal to 60% of the maximum amount on deposit if given by individuals, and equal to 50% if given by surety companies) but does not provide that the State shall have any preference or priority upon liquidation or distribution.

Section 21, ch. 47, Acts 1825, re-enacted as §21, ch. 36, R. S. 1831, and also as §21, p. 283, R. S. 1838, after providing that in all cases of collectors and other debtors of the State the real and personal property of the debtors should be bound from the time suit was lawfully commenced, added the following: "and in all cases where the estate of the debtor is insufficient to pay his debts, the State shall have preference and its demands shall be first settled and satisfied out of such estate." Whatever the effect of the portion of the act just quoted may have been, it was repealed by §380, ch. 40, R. S. 1843, p. 744, which was in almost the exact language of the earlier statute but which omitted the portion quoted above. (§4, ch. 59, R. S. 1843 provided that, with certain exceptions "all acts and parts of acts the subject whereof are revised and re-enacted . . . together with and consolidated in these Revised Statutes, shall be repealed" . . . Said ch. 59 also provided for continuing in force "all *special* acts and parts of acts relating to any of the debts" due the State, but that reference to "special" or "local" laws had no reference to *general* acts such as were revised by ch. 40, *supra*).

The appellant contends that even in the absence of a statute granting such a right of preference the state has a prerogative right, derived from the common

law, to a priority or preference over other depositors of an insolvent bank for the re-payment of its general deposits placed in the bank.

By §1, ch. 61, R. S. 1852, p. 351, §244, Burns 1926, "the common law of England, and the statutes of the British Parliament made in aid thereof prior to the fourth year (1606-1607) of the reign of James the First (with three specified exceptions) and which are of a general nature, not local to that Kingdom and not inconsistant with (the federal and state Constitutions and statutes)," are declared to be law governing this state.

The common law of England as it existed in 1607 may properly state and define many attributes and powers of sovereignty which are applicable alike to the Kingdom of Great Britain, to this republic and to our several states. No part of it, however, which is inconsistent with the spirit of our free institutions can be applied by us. *Ketelsen* v. *Stilz* (1916), 184 Ind. 702, 111 N. E. 423, L. R. A. 1918D 303, Ann. Cas. 1918A 965. The personal prerogatives of the King have no place or counterpart in our government. The source of all governmental power in this state is the people. Any sovereign prerogatives this state may have, come from the sovereign power of the people, and are ordinarily expressed in the Constitution or in the statutes.

It may be conceded that the State in the exercise of its sovereign power to secure an adequate revenue to sustain the public burdens and discharge the public debts, may and does assert a priority or preference for its governmental claims against its citizens, as in the levying and collecting of taxes, and in the collection of fines and forfeitures. This preference which the state has a right to exercise in governmental matters has always existed as an attribute of sovereignty. It existed in England and has often been said to be a part of the common law.

No specific rule of the common law (nor any statute) existed in 1607 by which the sovereign could claim a priority in the case of a bank deposit; the bank of England, the first institution through which the government did a banking business was not founded until 1694. It does not follow from the general rule of the common law giving a preference to the sovereign in governmental matters, that such a preference should exist where the state deposits money in a bank to earn interest, pursuant to a contract.

The state may have certain priorities or preferences in the governmental function of collecting the money with which it carries on the State business, but priority or preference can not, in the absence of a statute, be validly claimed for a debt which a bank incurs when it accepts a deposit of the state's money at interest under our depository laws.

When the State determines to place the funds it has collected in a bank as a general deposit, subject to check, and bearing interest, it enters upon a business transaction with the banking corporation, the same as any citizen might do; and in the absence of express legislation to the contrary, the courts can not and should not extend the preference that inheres in the sovereign exercise of governmental functions to include such a business transaction. Especially is this true where a receiver has been appointed for the insolvent bank and the rights of all the creditors of the bank have been attached to the funds in his hands.

The legislative department has, by the public depository law, given to the State, certain priviliges not allowed individual depositors. It has protected the State by providing for bonds to secure the repayment of the deposits. This of course is entirely right and proper and within the power of the legislature to do. The legislature, doubtless in fairness to all the depositors in

banks, has not provided that the State as a depositor shall have a preference upon the insolvency of a bank.

A wide diversity of opinion has been expressed in the many cases which have arisen in other jurisdictions upon the questions just decided and a brief review of those cases will be made.

· In some states a right of preference for state funds deposited in state banks exists by statute: *Booth* v. *State* (1908), 131 Ga. 750, 63 S. E. 502; *Re Marathon Sav. Bank* (1924), 198 Iowa 696, 196 N. W. 729, 200 N. W. 199; *Bent* v. *Inhabitants of Hubbardston* (1884), 138 Mass. 99; *Campion* v. *Village of Graceville* (1930), 181 Minn. 446, 232 N. W. 917; *State* v. *Ord State Bank* (1928), 117 Neb. 189, 220 N. W. 265; *Baxter* v. *Baxter* (1884), 23 S. C. 114.

In a number of jurisdiction the courts have held that the state has a prerogative right derived from the common law to a preference over the unsecured creditors of an insolvent bank in which it has its funds on deposit[1]:

Georgia: *Seay* v. *Bank of Rome* (1881), 66 Ga. 609; *Booth* v. *State of Ga.* (1908), 131 Ga. 750, 758, 63 S. E. 502; *Central Bank & Trust Corp.* v. *State* (1912), 139 Ga. 54, 59, 76 S. E. 587; *Robinson* v. *Bank of Darien* (1855), 18 Ga. 65.

Illinois: *People* v. *Marion Trust & Sav. Bank* (1932), 347 Ill. 445, 179 N. E. 893; *People* v. *Farmers State Bank* (1929), 335 Ill. 617, 167 N. E. 804, 65 A. L. R. 1327.

---

Note 1. In the *Matter of Carnegie Trust Co.* (N. Y.) it was said: "We think it clear that at common law the King was entitled to preference in payment of debts due to him from an insolvent before that of a subject. This is stated in 1 Coke on Littleton (131b). Under the statute (33 Hen. VIII, ch. 39, §74) it was enacted that the King's debt in suing out execution, be preferred to that of every other creditor who has not obtained judgment before the King commenced suit. . . .

"Under our Constitution we have no King. The King, therefore,

Montana: *Aetna, etc., Co.* v. *Miller* (1918), 54 Mont. 377, 170 Pac. 760, L. R. A. 1918C, 954; *American Bonding Co.* v. *Reynolds* (1913), (U. S. D. C. Mont.), 203 Fed. 356.

New York: *Matter of Carnegie Trust Co.* (1912), 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260; *U. S. F. & G.* v. *Carnegie Trust Co.* (1914), 161 App. Div. 429, 146 N. Y. S. 804.

Oregon: *U. S. F. & G. Co.* v. *Bramwell* (1923), 108 Ore. 261, 217 Pac. 332, 32 A. L. R. 829; *Fidelity, etc., Co.* v. *State Bank* (1926), 117 Ore. 1, 242 Pac. 823.

See also: Iowa: *Buena Vista Co.* v. *Marathon Sav. Bank* (1924), 198 Iowa 692, 196 N. W. 729; Tennessee: *Maryland Casualty Co.* v. *McConnell* (1923), 148 Tenn. 656, 257 S. W. 410; *United States Fidelity, etc., Co.* v. *Rainey* (1908), 120 Tenn. 357, 113 S. W. 397; *University of Tenn.* v. *Peoples Bank* (1928), 157 Tenn. 87, 6 S. W. (2d) 328.

West Virginia: *Central Trust Co.* v. *Bank of Mullens* (1929), 107 W. Va. 679, 150 S. E. 221; *U. S. F. & G. Co.* v. *Central Trust Co.* (1924), 95 W. Va. 458, 121 S. E. 430; *Woodyard* v. *Sayre* (1922), 90 W. Va. 295, 110 S. E. 689, 24 A. L. R. 1497.

and the prerogatives that were personal to him being repugnant to our Constitution are abrogated. But his sovereignty, powers, functions and duties, insofar as they pertain to civil government, now devolve upon the people of the state and consequently are not in conflict with any of the provisions of our Constitution. Inasmuch, therefore, as the claims or moneys due the King for the support and maintenance of the government, whether derived from taxes or other sources of income, were preferred over the claims of others, it follows that under the . . . Constitution . . . such preference became a part of the common law of our state . . ."

In *U. S. F. & G.* v. *Bramwell* (Ore.) it was said: "The existence and enforcement of the right are necessary for the protection of the public revenue. That the right would be of essential importance to the state if both the depository bank and the surety company should become insolvent, is obvious. The right is, therefore, one that is adapted to the circumstances, conditions and necessities of the people because essential to sustain the public burdens and discharge the public debts; and unless some provision of statute can be found which clearly evinces a legislative intent to abandon or waive this preference right of the state it is the duty of the courts to preserve rather than to defeat it."

In other states the courts have recognized the existance of such prerogative common-law right of preference for the state but have for the reasons indicated not enforced such preference:

Connecticut, because of a statute concerning the marshaling of claims, *Bassett* v. *City Bank* (1932), 115 Conn. 393, 161 Atl. 852.

Maryland, because such right does not constitute a lien,[2] *Public Indemnity Co.* v. *Page* (1931), 161 Md. 239, 156 Atl. 791, 792 because it was lost by the assignment for the benefit of creditors, *State* v. *Pres., etc., of Bank of Maryland* (1834), 6 Gill & Johnson 205, 26 Am. Dec. 561.

Michigan, because it was not enforcable in favor of the surety after insolvency, *Commr. of Banking* v. *Chelsea Sav. Bank* (1910), 161 Mich. 691, 125 N. W. 424, 127 N. W. 351.

Pennsylvania, because the surety company which sought to enforce the preference was held not subrogated to the right of the state to do so. In re *South Philadelphia State Bank's Insolvency* (1929), 295 Pa. 433, 145 Atl. 520.

New Mexico, because the right of preference existed only as long as title remained in debtor, and was lost when receiver was appointed. *State* v. *People's Sav. Bank & Trust Co.* (1918), 23 N. Mex. 282, 168 Pac. 526; *State* v. *First State Bank* (1917), 22 N. M. 661, 167 Pac. 3, L. R. A. 1918A, 394.

Utah, same, *National Surety Co.* v. *Pixton* (1922), 60 Utah 289, 208 Pac. 878, 24 A. L. R. 1487.

---

*Note 2.* The court said: "The debt due from the bank to the state is a debt on simple contract only, and not a lien, as is, and must be conceded. The state, therefore, having no lien on the property covered by the deed of trust, but a priority only, in the payment of its claim, if that right of priority has not been lost, it is subject, claiming under the common law, to the same common law rule, applicable to the royal prerogative right of priority in England, of the same description."

Texas, because the right of preference was waived by the enactment of a state depository law.[3] *Shaw Banking Commr.* v. *U. S. F. & G.* (1932), (Tex. Com. App.) 48 S. W. (2d) 974.

Wyoming, because state's requirement of surety bond waived whatever preference it might otherwise have had. *National Surety Co.* v. *Morris,* and *U. S. F. & G.* v. *Elliott* (1925), 34 Wyo. 134, 241 Pac. 1063, 42 A. L. R. 1290.

Some courts have declined to pass upon the existence of such prerogative, common-law right of preference, holding the same to be unnecessary for the reason that the state in making such a deposit exercises a private and not a sovereign function.

Ohio, *Fidelity, etc., Co.* v. *Savings Bank Co.* (1928), 119 Ohio St. 124, 162 N. E. 420, and holding such

*Note 3.* The court said: "While the authorities in other jurisdictions are sharply conflicting upon the subject, we think the better reasoned cases support the view that the enactment of a depository law requiring state funds to be deposited in state depositories, with provision for ample security, operates as a waiver of the state's right of priority in payment of its deposits out of the assets of a depository bank. . . .

"There is another substantial reason why we think the Legislature contemplated the modification of the common-law rule of priority of payment in so far as it applies to deposits of state funds in banks. Several years prior to the enactment of the first depository law in this state, the Supreme Court of the United States, by its decision in the case of *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, denied the power of any state to create a priority in the assets of national banks not recognized by the statutes of the United States. We must presume that the Legislature of this state was familiar with this decision, and knew that the state by the adoption of the common-law right of priority could not apply such rule to the payment of debts owing to it by national banks. If the Legislature did not propose, in enacting the depository law, to modify such common law rule, then it is placed in the enviable position of deliberately so legislating as to *place* banks, organized under the laws of this state, at a serious disadvantage in operating in competition with national banks. The Legislature is bound to have known that it would be extremely difficult for state banks to obtain depositors if it were known that they were subject to the hazard of losing their deposits, or a substantial portion thereof, in case of insolvency on account of such banks being required to pay the state deposits in full when no such requirement was or could be made applicable to national banks, although they are allowed to become state depositories."

preference if existent to be lost because it was not asserted before state bank examiner or receiver took charge of the insolvent bank.

Washington, *Aetna, etc., Co.* v. *Moore* (1919), 107 Wash. 99, 181 Pac. 40; *State* v. *Carlyon* (1932), 166 Wash. 498, 7 Pac. (2d) 572.

In a number of states it has been held that the state did not derive from the common law any inherent or prerogative right of preference for funds which it deposits in a bank that becomes insolvent,[4] (some of the cases holding that no inherent or prerogative common law preference exists at all).

Arkansas: *Maryland Casualty Co.* v. *Rainwater* (1927), 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332.

Arizona: In re *Central Bank of Wilcox* v. *Loudermilk* (1922), 23 Ariz. 574, 205 Pac. 915.

---

*Note 4.* In *Board, etc.,* v. *State Bank* (N. J. 1878)′, it was said: "The claim of the state rests upon a prerogative right of the crown of Great Britain, the contention being that the state succeeded to all royal rights, in virtue of its sovereignty, when the crown was displaced here as the sovereign power. . . .

"For over one hundred years as an actual, practical prerogative of government, it has neither been exerted nor recognized, and this circumstance, as a matter of contemporaneous and long-continued construction by all departments of the government, would seem to negative the existence of the right with great emphasis. A prerogative which has remained so long practically useless can hardly be said to exist. . . .

"And an author, quite as eminent a jurist as any name that ever adorned the American bench, has stated, that the right of preference of a state, in this country, does not rest upon the common law, but exists only where given by statute. 1 Kent's Comm. 248, note c. . . .

"It has been thrice adjudged in South Carolina that this prerogative was so purely an attribute of a despotic government, and so strongly in antagonism to the cardinal objects of a government established by the people for their common protection and security, that it could not, either as a matter of law or reason, be held to belong to the latter, as one of its inherent functions, in the absence of an express legislative declaration to that effect."

In *Denny* v. *Thompson* (Ky. 1930) it was said: "It may be true that money collected for public use is for the benefit of all the people for the maintenance and preservation of the government, that it is important that public obligations should be promptly met, and that the collection of debt due the state and subdivisions of greater importance to the people as a whole than the recognition

Colorado: *U. S. F. & G. Co.* v. *McFerson* (1925), 78 Colo. 338, 241 Pac. 728; *Board of Co. Commrs* v. *McFerson* (1932), 90 Colo. 408, 9 Pac. (2d) 614.

Florida: *Lake Worth, etc.* v. *First, etc., Bank & Trust Co.* (1929), 97 Fla. 174, 120 S. 316.

Kentucky: *Denny* v. *Thompson* (1930), 236 Ky. 714, 33 S. E. (2d) 670.

Minnesota: *Campion* v. *Village of Graceville* (1930), 181 Minn. 446, 232 N. W. 917.

Mississippi: *Potter* v. *Fidelity, etc., Co.* (1911), 101 Miss. 823, 58 So. 713.

New Jersey: *Board* v. *State Bank* (1878), 29 N. J. Eq. (2 Stew.) 268; same title 30 N. J. Eq. (3 Stew.) 311.

---

of private obligations—in a word, that public policy requires that the government agencies should never be deprived of that which has been taken for their necessities. Nevertheless, we think our traditions and history, our jurisprudence and legislative enactments, as expressive of the sovereign will, indicate a contrary public policy on this particular matter. We have, for instance, the establishment of a lien on all property to secure the payment of taxes, and statutes providing that security shall be required of officers and of depositories to insure the safety of public funds, to say nothing of those prohibiting preferences as between creditors of insolvent individuals. Thus in §4693 of the Statutes, which provides for the giving of surety bonds by state depositories, it is declared that their execution shall not impair or delay the right of the commonwealth to recover from any delinquent or defaulting bank, or the officers or stockholders thereof, in the same manner as other depositors'. Supplementing these legislative pronouncements is the high principle of equity, which abhors preference and favors equality.

"To permit the preference would result, in effect, in every depositor in an institution which holds public funds becoming the pledgor of his individual property as a guaranty of the safety of those funds. The remnant of monarchial powers over the property of the citizens which is recognized and perpetuated in some states has no place with us. The court therefore concludes that, in the absence of a controlling statute, the ownership of public funds can not be regarded as of a higher quality than that of private funds."

In *U. S. F. & G. Co.* v. *McFerson (Colo. 1925)* it was said: "This method of banking, so far at least as the sovereign was concerned, was unknown in England in 1607. The Bank of England, the first institution of the kind through which the government did business, was not founded until 1694.

"The authorities in this country are in hopeless conflict as to the existence of this prerogative of preference in those states which

North Carolina: *North Carolina Corp. Comm.* v. *Trust Co.* (1927), 193 N. C. 513, 137 S. E. 587, 51 A. L. R. 1350.

South Carolina: *State* v. *Harris* (1832), 18 S. C. (2 Bailey) 598.

United States: *U. S.* v. *Bank of North Carolina* (1832), 31 U. S. 19, 6 Peters 29, 8 L. Ed. 308; *Marshall* v. *New York* (1920), 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed. 315; *Central Trust Co.* v. *Third Ave. R. Co.* (1911), 186 Fed. 291, 110 C. C. A. 1 (2d Circuit); *Brown* v. *Am. Bonding Co.* (1914), 210 Fed. 844, 127 C. C. A. 406 (9th. Circuit).

The foregoing review shows there is considerable con-

have adopted the common law substantially as has Colorado. No one of them, however, has been called to our attention, which, in deciding the question, has considered the applicability of the law from the standpoint of the fundamental principle which we think controlling.

"The principle that where the reason for a rule fails, the rule fails, seems especially applicable here. The sovereign's preference is an exception to the general law. The doctrine is a harsh one, and from time immemorial has rested solely upon public necessity. Moreover, if Finch is correct, as quoted by Blackstone, that it is 'a maxim that prerogative is that law in case of the King which is law in no case of the subject', the prerogative could never be the subject of subrogation. Here the security was ample, the state has been paid by one employed for the very purpose of assuming that risk and performing that service. There is no necessity and hence no preference. If the surety were also insolvent the necessity would appear.

"If the rule of the common law—that the debts of the state are preferred to the debts of the citizen because it is necessary to the public welfare to secure the public revnue—is applicable to state bank deposits when the bank becomes insolvent, and if that preference be subject to the doctrine of subrogation in favor of one who pays the state, then we hold that rule inapplicable when the state debt is otherwise secured, because there is no ncessity for the preference."

In *United States* v. *Bank of North Carolina (1832), 6 Peters 29, 35, 8 L. Ed. 308,* the Supreme Court said: "The right of priority of payment of debts due to the government is a prerogative of the crown well known to the common law. It is founded, not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign preroga-

flict in the cases *first,* as to whether any inherent or prerogative right of preference of the state exists at common law, and *second,* if it exists, whether or not it includes a preference for state funds deposited under the conditions present in the case at bar. As we have already indicated, we believe the State is not entitled to exercise any prerogative or inherent right of preference for its deposit lawfully made in a state bank that becomes insolvent. In those jurisdictions which hold otherwise there is a conflict in the cases as to whether a surety company is subrogated to the right of the State to exercise such preference.[5] But having decided that such prerogative right of preference does not exist in this State it is unnecessary to decide the question of subrogation. The appellant surety company is entitled to no preference on its claim and the finding of the trial court on its intervening petition was correct.

Judgment affirmed.

Travis, J., not participating.

---

tive, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal prerogative may be clearly traced in these statutes, and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms."

In *Brown* v. *American Bonding Co. (U. S. C. C. A.—9th. Circuit)* the court, commenting upon the case just quoted from, said: "If, as there expressly held by the Supreme Court, the priority of debts due the government of the United States does not stand upon any sovereign prerogative, but is exclusively founded upon their own statutes, we are unable to understand how the right of priority of payment of debts due a state can be founded upon such a prerogative. Surely no state can have any greater sovereign right than the general government of the entire country."

*Note 5.* A number of the cases cited in this opinion (to other points) have held that such right of subrogation exists. To the contrary see: *Fidelity, etc. Co.* v. *Savings Bank Co., supra; Banking Commr.* v. *Chelsea Sav. Bank, supra. In re South Phila. State Banks Insolvency, supra.*